## CARTER v. GRIMSHAW & a.

A family settlement or voluntary conveyance, made by a father to his minor children, will be set aside by a court of equity, as not *bona fide*, collusive and fraudulent, when it manifestly appears to have been made in meditation, of a future fraudulent indebtedness, and injury to third persons or existing creditros ;

Or, when the object of such deed appears to be the creation of a secret trust,

beneficial to the grantor, evincing the design of gaining for such grantor a false and ficticious credit, he being in embarrassed circumstances.

Or, when made, to hinder, delay and defraud his creditors generally, embracing both existing and subsequent creditors.

*W. H. Y. Hackett*, for plaintiff.

*Hatch*, for defendants.

This was a bill in equity, wherein Adolphus J. Carter of Charlestown, Massachusetts, trader, complains against John Grimshaw of Portsmouth, in this county, trader; Charlotte A. Currier, the wife of John L. Currier of Portsmouth, husbandman; John E. Ryder, trader; Joseph M. Edmunds, deputy collector; Alfred Tucker, trader; Martin L. Twombly, truckman; Frances Grimshaw, Annie Grimshaw and Charles Grimshaw, minor children of said John Grimshaw; John W. Stott, Ellenwood Hatton, William Locke and John E. Batchelder, all of said Portsmouth aforesaid, and allege, that said John Grimshaw being seized in fee of two certain parcels of land situate in said Portsmouth, on Bridge Street, as described in said bill more particularly, on the 18th of September, 1866, by his deed of that date, did convey by mortgage the second named lot at the corner of Bridge and Hill Streets, to said Charlotte A. Currier, to secure the payment of five hundred and fifty dollars, due from said Grimshaw to said Charlotte, and on the 30th of October, 1866, did convey by mortgage the land and buildings on Bridge Street, to Harriet Sampson, to secure the payment of five hundred dollars to her, and paid Harriet for a valuable consideration, afterwards duly assigned said debts and mortgage to said Ryder. These debts are believed to be true and just debts. The bill further alleges that on the 28th of June, 1864, said Grimshaw mortgaged said lot on Bridge Street to said Joseph M. Edmunds, A. Tucker and W. L. Twombly for *two thousand dollars*, and on the 5th day of December, 1865, he also mortgaged the same lot on Bridge Street to said mortgagees to secure them against loss, for being sureties for said Grimshaw's appearance before United States Commissioner Hallett for his appearance at the United States Circuit Court in October, 1864. These two last named deeds of mortgage are believed to be now void by reason of the fulfillment ot the condition thereof, but are not discharged on the records of the record of deeds of said county.

And the plaintiff further says, that on the 30th day of May, A. D. 1867, with the purpose to defraud the plaintiff, and other persons, said Grimshaw did make and execute a deed for the pretended consideration of one dollar to his minor children, the said Frances Grimshaw, Annie and Charles Grimshaw, of both of said lots of land and the buildings thereon as before described, and of all his real estate wherever the same be situated or however described.

And immediately afterwards applied to the plaintiff, to purchase goods upon credit, representing himself to be a man of substantial

property, though he then had *no estate*, except the right in equity to redeem said real estate ; and upon such representations soon after purchased of the plaintiff, on credit goods to the amount of about two thousand dollars, which he has not paid for ; and said J. Grimshaw is in possession of both of said tracts of land and buildings and holds the plaintiff out, and being in actual occupation of part of said premises, and having leased the residue to said Stott, Hatton, Locke and Batchelder, who are now occupying the same, and who are wrongfully combining with said Grimshaw, to pay the rent of said real estate to him, and to hold the plaintiff out of said several premises, and the plaintiff alleges that he holds the lawful right in equity to redeem all said real estate mortgaged as aforesaid.

Thereupon, the plaintiff prays that the said Charlotte A. Currier, and John E. Ryder may severally be ordered to bring their several and respective claims against said Grimshaw, secured or intended to be secured by said Grimshaw's said mortgage of any and all said real estate into court, and that the court will ascertain the amount due thereon, and that the plaintiff may have leave to pay the same, and that upon such payment the said Currier and Ryder may be ordered to discharge or assign their said respective mortgages and claims to the plaintiff as will best protect his right.    And that said Edmunds, Tucker and Twombly may be ordered to bring into court both of said mortgages, given by said Grimshaw as aforesaid, and to show the amount due thereon, if anything ; and that upon the payment of the amount due thereon by the plaintiff ; that the holders thereof may be ordered to assign the same mortgages to the plaintiff, and if nothing be due on the same, that they may be ordered to give up and cancel the same.

Although the deed of said Grimshaw to his minor children be void, yet its existence is a cloud upon the title, which the plaintiff is seeking to acquire to said real estate by paying and discharging all honest and valid liens thereon, the plaintiff prays that said Francis, Annie and Charles Grimshaw may be ordered to bring said deed to them from their father, dated May 30, 1867, into court, and that said deed may be adjudged and decreed to be null and void, and that said minors by their guardian *ad litem* may be ordered to execute such release, as may remove said cloud from said title. And that said Stott, Hatton, Locke and Batchelder may be prohibited by the order and injunction of the court from paying any rent in *arrears*, or which hereafter may grow due for the use of any or all said real estate.    And that they be required and ordered to pay all said rent into court to the end, that the same may be applied towards the payment of said mortgages, or such of them as the court may order ; and the plaintiff prays that the said Grimshaw and said Stott, Hatton, Locke and Batchelder, and any and all persons claiming to hold, or holding said several premises or any part thereof under said Grimshaw, and the said Grimshaw be commanded by this court, to quit said premises and yield possession thereof to the plaintiff.

And thus the plaintiff may be let into said several premises, and demand to hold the same, subject to the right of redemption, if any thereto. And that all and singular, said several mortgages, as to said Grimshaw, and the *lien* which the plaintiff holds upon the equity of redemption of said several parcels of real estate in the nature of a mortgage, may be decreed to be foreclosed absolutely and forever against said Grimshaw, and the title thereto to be vested in the plaintiff, and that all claim and title of said John Grimshaw, Francis Grimshaw, Annie and Charles Grimshaw, any or either, or all of them may be forever barred, and for other such relief as may be just. Signed but not sworn.

To the bill sundry answers were made by the defendant. The facts are set forth more especially by John Gunshaw, who may be regarded the prime defendant. The parties have taken evidence also in this case, and Mr. Frink has been appointed by the court master in chancery, who has heard the parties, and reports to us the evidence of the case, and the results as found by him. We proceed to examine this evidence, and propose to state our conclusions upon the finding of the master, as reported by him to this court at the last June law term Rockingham county, and the law applicable to the facts of the case. Mr. Hatch was also appointed guardian, *ad litem*, for said minor children by the court.

The Master reports, that on the 30th day of May, 1867, the defendant, John Grimshaw, conveyed to his children, Frances, Annie and Charles, then minors, by a deed of release and quitclaim, all his interest in his real estate wherever situated, known and described. There was no money consideration to support said deed, but the defendant claims the same was made, in consideration of blood and affection, and as an advancement to his daughter Frances, then expecting a marriage. At the time of said conveyance, the said John Grimshaw was indebted to one Slatterly, who was then engaged to, and afterwards married Frances, and also to other persons residing out of the state, in an amount, exceeding the property remaining in the hands after this release. The greater part of said debts to other parties, have not been paid, and are still outstanding against him, the said Grimshaw. This deed of release was recorded on the day of its date, and at that time, the defendant, Grimshaw, had no acquaintance with the plaintiff. In June, about fourteen days after this conveyance, John Grimshaw addressed a letter to the plaintiff, proposing to purchase a piano forte of him, and the defendant soon afterward did buy of the plaintiff, a piano with the furniture belonging to the same, for five hundred dollars, and gave to him his note for the same payable in ten days. This note bears date July 3, 1867. The master further reports, that about a month later, defendant bought of plaintiff Carter, furniture and other goods, amounting to the sum of $2,161.07, including said piano ; the last purchase having been made for the 29th of Aug. 1867. None of said goods have been paid for. At the purchase of these goods, the defendant represented that his daughter Frances was about to be married,

and that he had given to her a house, and was going to furnish it handsomely, and that he designed the rest of the goods for the Portsmouth House, of which he was the proprietor.   On the 27th of July, 1867, the defendant mortgaged the said piano and other portions of said goods had of the plaintiff to Slatterly, his future son-in-law.   Slatterly marrying his daughter in November afterwards, and a large quantity of the balance of said goods had of plaintiff, Grimshaw sold to Betton and Hanscom, auctioneers in Portsmouth.   A large mirror, (French plate) charged in the bill, as of August 16, at seventy-five dollars which Grimshaw bought of plaintiff, representing that he wanted it for the hotel, he immediately sold to Benj. Cheever at a discount of fifteen dollars.   But a small portion of said goods were in fact used by Grimshaw, or any of his family.   The second purchase of said goods, was after the defendant had mortgaged the piano to Slatterly.   At this time, defendant also had of plaintiff, two hundred and fifty yards of new carpeting.   He represented himself as the owner of the Portsmouth House, and that he had also built a new house for his daughter, and generally that he was a man of means, and that he desired the carpeting for their houses, which representation the Master finds was not true in fact. The master also found, that the furniture being a rich walnut chamber set, under date of Aug. 23, at $225.00, was soon after offered to Henry F. Wendell, an auctioneer, at a price less than he agreed to pay for it, but Wendell declined to purchase it, hair cloth charged at $45.00 delivered Aug. 23, was immediately sold to a furniture dealer in Portsmouth for less than the market price.   The Master finds that all of said goods, were sold by the defendant at prices less than he agreed to pay for them.   It was also shown by the defendant, that a letter from Hon. Frank Jones, addressed to the plaintiff representing the defendant as a man in good circumstances, and as worthy of credit to the amount of $500.00, was exhibited to the plaintiff at the time of the first purchase of goods or the piano.   The Master found that at the date of the first purchase, the defendant was engaged in the liquor traffic.   On the 27th day of June, A. D. 1867, being a few days before the first article was delivered, certain liquors of the defendant of the value of a thousand dollars or eleven hundred dolars, were seized by the United States authorities for an alleged violation of the revenue laws.   Said liquors had not been paid for by Grimshaw at the time of the seizure, nor at any time since.

The defendant at the date of this deed to his children, was a widower.   His wife died January 6, 1866; on her death bed, she requested the defendant to convey, or make over his property to his children.   In October, 1865, the husband and wife went to the office of Mr. Hatch for some such purpose, but not finding him, nothing was done.   The property was acquired, by the joint labors of both husband and wife, in a public house.   At the time of the conveyance, part of said property was rented to tenants, Stott, Hatton, Locke, &c, one of the houses being occupied by the defendant and his family, as a public house.

No change was made in the possession of said property after the deed, except that insurance policies were taken in the name of the new owners or grantees. Defendant's daughter Frances, had no charge of domestic arrangements of the public house. The rents from the tenants, were collected in the name of the grantees, after the deed. Such is the general statement of the more material facts of the case as found by the master.

NESMITH, J. If the question in this case, merely involved the validity of the sale of the goods from the plaintiff to the defendant, under the facts as stated by the master, we would be prepared to declare it fraudulent and void, on the ground that the defendant never intended to pay for the property purchased; and that he used misrepresentation, artifice and false pretences to obtain possession of them.

The deceit, or fraud, which makes void the sale of this property, is found in a series of acts, all tending to show a previously concerted contrivance to obtain of plaintiff, goods without the design to pay for them. In addition to the defendant's false representations, we have the evidence of an inordinately large quantity of goods purchased, in proportion to the regular wants, or purposes of the defendant's apparent business. Then the goods are not kept, or dealt with in such place, or manner, as to show a fair acquisition for the purpose of an honest, regular business. Then we have the evidence of *forced sales* at different times, of separate quantities of goods, at a sacrifice, being such as had been purchased on credit, and other conduct, all tending to show the design to evade payment therefor, to the plaintiff, and unjustly to appropriate the avails thereof to the defendant's use. Hilliard on sales, 334.

The sale of the goods to the defendant, and the declaration and acts done by the defendent in relation to them immediately follow the conveyance of defendant's real estate to his minor children. Cases are numerous to show, that when the *motives* and *intent* of parties to an act, become material, such may be shown by their separate and independent acts and declarations, accompanying or preceding the main act in question.

Generally, in fraudulent conveyances of property, the proof will be limited to similar acts about the same time. *Bradley* v. *Obear*, 10 N. H., 477. *Blake* v. *White*, 13 N. H., 267.

The deed of the land in this case is without consideration, and is properly denominated a *voluntary* conveyance. The plaintiff stands as a creditor subsequent to the conveyance in question, and he is therefore subject to a different rule of proof, than an existing creditor would be. A conveyance is not void as against *subsequent* creditors, unless it be not only *voluntary*, but *collusive* and *fraudulent* and made with a *view* to *future debts*. 8 Wheaton, Rep. 228. 4 Wendell, Rep. 390. 6 Paige, Rep. 526. Hilliard on sales, chap. 21, § 10, page 343, also, page 352.

So a conveyance, by one not in debt, to his wife* or other relative,

of a portion of his estate, is not *fraudulent,* unless it was made with the *intent* of *becoming indebted.* *Haskell* v. *Bakewell,* 10 B. Munroe 206.

Judge Story well remarks, that there is nothing inequitable or unjust in a man making a voluntary conveyance or gift, either to a wife* or child, or even to a stranger, if it is not at the time prejudicial to the rights of any other person, *nor in meditation* of *any future fraud, or injury to other persons.*

If there is any *design* of fraud, collusion, or intent to deceive third persons in such conveyances, although the party be not then indebted, the conveyance will be held void for it is not *bona fide.* 1 Story Equity, § 356, and Atherly on Marriage Settlements, 212, cases in note. Hence, he says, the law has widely disabled the debtor from making any voluntary settlement of his estate, to stand in the way of existing debts, and this is the clear and uniform doctrine of the cases. The doctrine laid down by Story, is sustained by the courts in the state; more especially in *Pomroy* v. *Bayley,* 43 N. H., 122, where conveyances of this character are discussed, and just limitations prescribed. Under the rule established by the aforesaid cases, we cannot find the deed from Grimshaw to his minor children, valid, or as made in good faith, either as to existing, or subsequent creditors, because from the evidence, it manifestly appears to have been made with a view to future indebtedness, and is, therefore, for this reason, fraudulent as to this plaintiff. Again, Grimshaw remains in actual possession and management of one of the houses, as before the deed; then we have here, evidence of the reservation or creation of a secret trust beneficial to the grantor, indicating merely a ficticious transaction, and gaining for the grantor a false credit, therefore, fraudulent in its character. *Coburn* v. *Pickering,* 3 N. H., 415. Again, the circumstances of this case, seem to lead to the inevitable or inresistable conclusion that the grantor at the inception or time of the delivery of his deed, intended to hinder, delay, or defraud his creditors. The direct tendency of such a conveyance, is to impair the rights of creditors, generally, evincing bad faith, and is pronounced fraudulent *per se,* or conclusive evidence of fraud. *Coolidge* v. *Melvin,* and cases cited, 42 N. H., 516. *Carlisle* v. *Rich,* 8 N. H., 44. Twyne's case, 3 Coke, 80.

When it appears manifest, that a *fraudulent use* is made of a deed of settlement, it may be carried back to the time when the fraud was commenced. 1 Story Equity, § 364. *Jackson* v. *Town,* 4 Cowper, 604. *Verplanck* v. *Steney,* 12 Johns, 536. Our opinion is, that the said deed of settlement from Grimshaw to his minor children be declared null and void, and that the decree of this court issue accordingly; and that the guardian *ad litem,* execute appropri-

*Note.—See however Perley, C. J. in *Vogt* v. *Ticknor,* 48 N. H., 249-250, as to the effect of our statutes, but see *Caswell* v. *Hill,* 47 N. H., 413.

*Reporter.*

ate releases of all right and title, claimed by any or all of said children, and that said lessees be ordered to pay their rents to and for use of plaintiff, &c. The plaintiff, having according to well settled practice in this state, obtained his legal hold of the equity of redemption of the defendant's estate conveyed to his minor children, by attachment in one of our courts of law, will in due time proceed to remove the other encumbrances existing in the form of mortgages upon said estate according to the answers made, and the evidence furnished to the court. There does not seem now to be occasion, for any special order in relation to these previous mortgages, as they are admitted to be founded in right, and the amount due on each, can be readily ascertained and payment made accordingly.